King,- J.
This is a petition in error to reverse the judgment of the court of common pleas in an action in which the state of Ohio prosecuted Leslie L. Barnes for the crime of perjury. He was convicted in the court of common pleas, and sentenced to á term in the penitentiary, and it is claimed here that several errors occurred in that court in the course of his trial which were prejudicial to him, and for which the' judgment should be reversed. Some of these I will notice later.
The indictment charged, in substance, that Barnes had testified in an action brought by him against his wife for *15 divorce; that he had no acquaintance with one Adams, alias "Wight, before October 17, 1896; nor had he met him after November 18, 1896, more than four times; and that said' statements under oath were false, and were material.
To this indictment the defendant pleaded not guilty. Shortly after, and at the same term of court, the case came on for trial. The jury disagreed, and ah the following term it was again tried, and resulted in the verdict which this proceeding seeks to have set aside.
It is urged that this indictment is insufficient, because it does not aver whether the oath or the matter deposed and declared in the-indictment was orally deposed, or in writing; and second, that there is no matter pleaded in the indictment which would show upon the face of it that the alleged false testimony given in the case referred to was material to the issues in that case; and third, it is said that the innuendoes are insufficient and are not connected with the matter pleaded. To the last of these I need only say that we do not think there is any material difficulty with the innuendoes,the objection mainly being to the innuendo which states that the statement made by him that he had not seen Myron Wight before he came to Barnes to rent a room, or came to his apartments to rent a room, does not sustain the innuendo that he meant thereby that he had not seen him before the 17th. day of October; but the allegations-denying the truth of these statements in the indictment show that in both respects they were false. In other words, the statement that he had not seen him before he came to his apartment was false, and he had not seen him before the 17th.' day of Oct., was likewise a false statement. So far as the-indictment itself is concerned, in the absence of a motion to quash, or demurrer, we think it is sufficient to put the defendant on trial.
As to whether the indictment should have stated whether the words were orally deposed, or in writing, and whether *16 it is sufficient upon its face to show the materiality of the statements, and that the statements are material, it is, I think, sufficient to say ' that it is covered by sec. 6897, which I will read:
• “Whoever, either verbally, or in writing, on oath lawfully administered, willfully and corruptly states a falsehood, as to any material matter, in a proceeding before any court, tribunal, or officer created by law, or in any manner in relation to which an oath is authorized by law, is guilty of perjury. ”
In that connection T will'read sec. 7221:
“In an indictment for perjury, or for subornation of perjury, it shall be sufficient to set forth the substance of the offense charged, and before which court or authority the oath was taken, averring such court or authority to have full power to administer the oath, together with the proper averments to falsify the matter where the perjury is assigned, without setting forth any part of any record or proceeding, or the commission or authority of the court, or other authority, before which the perjury was committed.”
The statute says that if he does this either verbally or in writing, or if the oath be as to any matter material in a proceeding — -not necessarily a cause, but any proceeding — that it will be sufficient to allege generally what the matter was which is claimed to be false, and averring that it was false, without setting forth any part of the record. There would be some reason, perhaps, for saying whether it was verbal or in writing, but at the same time we are not prepared to hold, since the forms laid down in Wilson’s Criminal Code do not put those words in, nor do they allege any facts which show upon the face of the indictment that the indictment itself was material. But on the matter of form we think. the case of Dilcher v. The State, 39 Ohio St., 130, in which the indictment is set forth in full, is an authority to the effect that it is not necessary to allege either of those things. That was an indictment for testify *17 ing falsely, and there is in that indictment no allegation that tbe words were verbal or in writing. There are no allegations of fact showing that they were material other than the single allegation that they were material. It is said that is a conclusion of law, but it is the language of the statute in that respect, and taking the statute which defines the crime in connection with the last statute which I read, and we think it is the intention of the legislature to say that it would not be necessary to set forth all these facts which would go to show why or wherein tbe testimony claimed to have been false, was material in the proceeding before the court. It will be noticed in the case in 39 Ohio St., that the indictment was almost in the language of the one in .this case. The court say on page 131:
“Tt is not necessary to aver wherein the alleged false testimony was material; it is sufficient to - allege generally that it was material, and the indictment need not charge more than is necessary to adequately express the offense. It is not necessary that the testimony upon which perjury can be predicated, must have the effect, if true, of establishing or deciding the matter in issue. It is sufficient if it has a legitimate bearing on that issue. If it tends, within the rules of law, to influence the court or jury in deciding the issue, it is material.”
So we think the objections to the indictment cannot be sustained.
As I have said, the defendant pleaded not guilty, and went to trial, without making any motion or demurrer to the indictment. On the trial a number of witnesses were called on both sides to show that.on the 13th. . day of January,' 1896, there was on trial in tbe court of common pleas of this county, Judge L. W. Morris presiding, a case of di. vorce and alimony in which the plaintiff in error was plaintiff and his wife at that time was the defendant. These witnesses were called, five of them for the state, and testified that they were present in court; that the case was called for *18 trial; that it was tried; that the plaintiff in error here"was called as a witness; that he was sworn. One of them, perhaps, only testified to the fact that he was sworn, but the others all testified that he was called as a witness, and that he testified. And they proceed then to prove all these allegations of material facts contained in the indictment in the testimony of Mr. Barnes. No objection was made to any of that testimony by the defendant upon any grounds that are urged here, and in fact,no objection was made to any of the witnesses stating the fact that the case, naming it, was tried in the court of common pleas. The defense proceeded to introduce as many more witnesses, and they called at least five other witnesses, who testified that they were present in the same court room, before the same judge, and on the same day, and that they heard the testimony in the case on trial — that of Leslie L. Barnes v. Cora E. Barnes, — and that they heard the plaintiff in that case and the defendant in the criminal case, Barnes, testify. In addition to that, the state offered the petition and answer in the divorce case, also a copy of the appearance docket; but it did not offer the journal entry of.the court — for a complete record had not been made-showing the trial or the disposition of the case of Barnes v. Barnes; and it is urged that the fact required to be proved in order to maintain the prosecution on this indictment, that the case of Barnes v. Barnes was then and there and in that court pending, and then and there and in that court tried, can only be proved by the records of the court of common pleas, and that there is no such record here. I think that part of the record admitted does not show the trial of the case of Barnes v. Barnes, in the court of common pleas, on the 13th of January, 1896; it does .'show, however, that such a case was commenced, and that it was pending in the court of common pleas a short time before; but it does not show what disposition was made of it. In the light of that record, then, the sfate *19 offered certain witnesses', and they, without objection,testified that that case was called for trial, and tried upon the testimony that was offered in the case, and decided by the court. And the defense offered as many more witnesses to prove the same fact. Now, upon error, can the plaintiff in error here avail himself of the objection that there was not offered evidence of record? We think not. We think if that was a pertinent objection, he should have made it at the time of the introduction of the state’s testimony, or at least before he entered upon his defense; that he has waived it, if it be a pertinent objection; but we hardly think it is a pertinent objection in the light of the condition df this record. This case was shown by the records to have been pending in the court of common pleas shortly before the trial, the precise day it is not necessary to recite; as there was nothing in the record to show the disposition of it, the presumption would arise that it was still pending'on the 13th day of January. The fact of the trial of that case before Judge Morris, it seems to us, could have been proved by witnesses orally — ■ certainly proved by them if no objection was made to that class of testimony; and this record abundantly supports the fact, both on the part of the state and on the part of the defense; for these witnesses are asked, all of them, if they were present in the court of common pleas when the proceeding — using the precise word which is named in the statute, a “proceeding” — in which the case of Barnes v. Barnes was on trial or hearing before Judge Morris. They say it was. We do not think it would be a justifiable holding to say that with the record in that condition, showing absolutely the pendency of the case a short time before this trial, showing by witnesses offered here without.objection, and on the part of the defense as well, its actual trial, that there is no proof here of a trial of that case on the 13th of January, 1896.
No question was made of that until the court came to charge the jury — and I may as well notice that at this point *20 —when the defendant’s counsel requested the court to say to the jury that—
“As a matter of law that an essential element of the proof in this case is that the alleged false testimony was given in a cause on trial in the court of common pleas of Lucas' county. Before the jury can so find, there must be sufficient evidence to that effect; and oral evidence that a trial was pending would not be sufficient. Such fact must be established by the journal or other record evidence; and unless' such evidence was produced, the jury must acquit.”
2. “The jury are instructed as a matter of law, that no legal ox sufficient evidence has been offered in this case that the case of Leslie L. Barnes v. Cora E. Barnes was on trial at the time it is alleged in the indictment the alleged false testimony was given.”
Those requests were made upon that point, and the court refused to give them. I have said, we do not think it was’ error for which this judgment should be reversed in refusing to give those requests as made.
Many questions have been argued bearing upon the materiality of these statements contained in the indictment. It is urged in the argument, that conceding that Barnes testified as alleged in the indictment, still it was not material. The case of Barnes v. Barnes was an action for divorce, and the allegation of the plaintiff in his petition was that his wife was guilty of adultery with one Adams; and the proof in the case tended to show that on a certain occasion in November Barnes went to his apartments or' rooms in the Schmidt building in company with some other persons, and caught or found Adams, as he called him at' that time and as he was then known, in a room with his wife in a position and situation that was at least compromis-1 ing to her. On the trial he was asked about his acquaintance with Mr. Adams, perhaps on cross-examination, possibly in chief, or both, and he testified that the first time that he saw Mr. Adams was when he came to see him where *21 he was at work at the court house, and inquired of him for rooms, and he told him to go and see his wife at their apartments, and see whether she had any room that she would rent him; that that was on the 17th. of October, as fixed by the proof in the casé. He testified further in that case, that he never had known Adams before. The state in this case offered evidence tending to show that Mr. Barnes, had known Mr. Adams sometime before, and that Mr. Adams’ real name was Myron Wight: that Barnes knew it; that he had associated with him before; that Barnes introduced Wight to his wife under the name of Adams, knowing that his name was Wight. Barnes also testified in the divorce case, it is claimed, that after this occasion when he had found Adams in his wife’s room and then had expressed his dissatisfaction with the proceeding, he had had no other acquaintance with him other than that he had casually met him not exceeding four times. The state in this case offered evidence tending to show that he had met him frequently, and a great many more than four times; that he Lad dined with him; they had been together in a room which Mr. Barnes afterwards occupied, and that they were acquaintances. Now, as we have already held, it was unnecessary to set out all those things in the indictment to show it as material in the divorce case to inquire of Mr. Barnes to testify as to his acquaintance and relationship with this man; but it was upon the trial of the divorce case certainly pertinent to show the relations that existed^ between these men, and that regardless of whether the defendant in that case had in her answer alleged that this divorce was a matter of conspiracy between her husband and this man, or a matter of connivance, or a criminal matter, or anything of that sort. It was material for the court trying that case to have inquired' of its own motion, and to have satisfied itself whether this man Wight, who came upon the witness stand and testified, and this man Barnes, who testified to those acts which pointed at least towards adultery, testified *22 to a transaction that was bona fide, without the consent and knowledge of the husband, or whether it was a thing he had some knowledge of, and which he had winked at. This was certainly material. Counsel might have inquired, and if they did not, the court might have inquired of him — for it was the duty of the court,to ascertian whether the proceeding in divorce was prosecuted honorably and in good faith — • ■as to these things. If Mr. Barnes on the witness stand, in answer to the question as to his acquaintancó with this man Adams had said “I don’t know him; I never saw him until October 17th,” that of course precluded the necessity of making any further inquiry as to his acquaintanceship. If that was true, it was certainly material. As said in the 39 OhioSt., 134, it is sufficient if this testimony has a legitimate bearing on the issue — if it tends, within the rules of law,to influence the court or jury in deciding the issue,it is material. In that case it was alleged that a person was presumed to be dead, not having been seen for seven jears, and upon the.trial the witness who was charged with perjury testified that he had met him, that he had talked with him; that they met three or four times, and that they sat down and discussed matters,and that he knew the person alleged to be absent well, and they had ..frequent conversations during a period of some three or four days. The matter charged in the indictment was that he had said that he had met him three or four times, and the allegation was in denying that, that he had not met him several times, and did not haVe any mutual recognition, well knowing that the statements he made were false. It was alleged that they were not material. The question was whether the man was alive or not, not whether he met him three or four times, or where he met him. But the court said—
“The material inquiry in the Meigs county case,as shown by the evidence on the trial, was whether Martin was alive— whether he had been seen or heard fróm^during the preced *23 ing seven years. Stewart’s testimony that he had seen him, without fixing time, place, or circumstances, might have been wholly insufficient. To corroborate and strengthen that statement he said he saw him, not once, in passing, a long time before, at a distance (that would leave room for a conclusion of mistaken identity), but several times, on two or three different days, at Deer Lodge, in September, 1880, that they had spoken together, and mutually recognized each other. The legitimate effect of each one of these statements was to strengthen his testimony as to the main fact, to make it impossible that he could be mistaken. Each one, was in that sense, and within the rule stated, material to the issue being tried, and being so material they were divisible, and perjury may be predicated on each."
We think that is clearly material. In the course of the trial it was sought to show by Judge Morris, having shown that he was the judge before whom the proceeding was had that the statement of Barnes on the trial of the divorce case did not affect his mind in rendering the decision which he did render, and that his judicial opinion and his judgment had been made up from other evidence in the case. That was objected to, and the court sustained the objection. We hardly see how that could have been competent. The only question to be determined — and that is to be determined partly by the court and partly by the jury. — in this case was, whether the evidence in question might have affected the decision; and if it was material evidence, it follows as a matter of law that it might affect the decision, because no evidence is supposed to be admitted except it is material, and it is admitted only because it will affect the decision of the case. It only becomes material because it might affect the decision. That makes it material. So it was competent to inquire of Mr. Barnes if he had known Adams or Wight before; and if we should assume that the proof offered by the State in this case is correct, that Mr. *24 Barnes did know Wight before the time Barnes testified in the divorce case as his first acquaintance, and if Barnes had testified in that case as to all of his acquaintance with Mr. Wight, and had informed the court that he knew his real and true name was not Adams; that he knew it was Wight, and that he had taken him into his family with the knowledge that he had given a false name, it is quite certain that that would have been exceedingly material, and would prob. ably have had some effect upon the opinion and decision of the court. But when Mr. Barnes said he didn’t know him, and had never seen him before and had never seen him afterwards to have any acquaintance with him, after he had discovered his relations with his wife, that shut off, as I say, inquiry. It may be true that the divorce which was in fact granted in that action was not granted upon the testimony of Mr. Barnes, but upon other testimony which the court thought, under the circumstances, more credible; but if the theory of the state in this case could have been fully and clearly presented to the court in the divorce case, it may be that the court would not have granted the divorce at all. But whether the court would or would not, still it remains true that the relations of this man Wight were material to the issue tried in the divorce case, and that whether there was any answer filed or not. It would not be competent for the defense to show that the court would have decided the case in the same way whether Barnes testified as he did, or not. The court could not very well say what he would have done in the divorce case if Barnes had told what the State claimed here was the truth, because the court decided the case upon the testimony it had. This is all I need to say about the testimony in the 'case. It is claimed, that the defense were unnecessarily restricted in offering testimony; that they should have been allowed greater latitute. We do not discover in that anything to the prejudice of the defendant.
*25 It is claimed that the charge is erroneous, because the court, among other things, left the question of the materiality of these statements to the jury. A careful reading of the charge does not indicate that the court did quite that. The court said to the jury, after discussing several things which it was necessary for them to find—
“If jou are satisfied beyond a reasonable doubt that the statements alleged in the indictment, or any one or more of such statements, were so made by the defendant substantially as alleged, you will then consider and determine from the-evidence whether or not such statement or statements were upon a matter that was material in the trial of the divorce case. ”
The court then proceeds to state what had been said with reference to the issue in the divorce case, and says:
“ If, therefore, you find that upon the trial of the divorce case there was evidence that Myron Wight was the person described in the petition as George Adams, and that Wight, alias Adams, went to the rooms of Barnes in the Schmidt building to rent a room on the 17th day of October, 1896, then I say to you as a matter of law that the second, third, and fourth statements alleged to have been made by the defendant, if they were made, were each material statements, and were each upon a matter that was material to the issues in the divorce case.”
And then he discusses that further, illustrating to the jury how it could be material, and says:
“And if you find that there was such evidence, then, as I have said, the second, third, and fourth alleged statements were each material statements, and the first alleged statement was material only in case it was made in immediate connection with the further statement that he was not acquainted with Wight before October 17, 1896, or in case it was made in answer to an inquiry as to how long he had known or been acquainted with Wight before said time.”
“Tn determining whether or not the alleged testimony of the defendant on the trial of the divorce case was material, you are not to consider or determine whether such testimony *26 did or did not affect the result of that case. The question in this connection is not whether the alleged testimony of the defendant was deemed wortLy or unworthy of consideration or belief, but the question is, was it pertinent to the issue, and upon a material matter?”
L. M. Murphy & J. K. Hamilton,tor Plaintiff in Error.
C. E. Summer, for Defendant in Error.
‘‘I have given you the law upon that subject by which you must be governed in this case. You must accept and apply the law as given to you by the court.”
It cannot be fairly said that the court left the question of the materiality of the statements to the jury. But if the court did, is the plaintiff in error prejudiced thereby ? If these statements as a matter of law are materiel, so that a reviewing court can so hold, and the court ought to have said unequivocally that, if proved, they were material statements, then the defendant in error is not prejudiced by not saying that to the jury, but giving the defendant another opportunity by allowing the jury to find whether they were or not. But the fair reasoning of the court is that the statements were material.
These comprise the principal questions that have been discussed. We have come to the conclusion, from a careful reading of the record and an investigation of the authorities cited on both sides of the case, that there is no substantial prejudicial error in this case. Therefore the judgment of the court of common pleas will be affirmed.